# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**SHERRY WALKER,**
       **Plaintiff,**

    v.                                      Case No. 17-C-0583

**CHILDREN'S HOSPITAL OF WISCONSIN,**
       **Defendant.**

---

## DECISION AND ORDER

Sherry Walker commenced this action against her former employer, Children's Hospital of Wisconsin, alleging that she was terminated in violation of Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, the Rehabilitation Act, and 42 U.S.C. § 1981. She alleges that Children's terminated her because of her race and because of a perceived disability. Before me now is Children's motion for summary judgment.

## I. BACKGROUND

Walker, an African-American woman, was employed by Children's as a "performance analytics intelligence analyst" from September 29, 2014 to May 6, 2016. In this position, Walker worked in Children's strategic-planning department and was responsible for analyzing information and providing it to Children's administrative and medical leaders, who used the information to make the company's strategic decisions.

At all times, Walker performed the analysis function of her position to Children's satisfaction. However, beginning in May 2015, and continuing over the course of about one year, Walker made increasingly bizarre accusations against her coworkers and supervisors. Walker initially complained that her coworkers were saying negative things

about her and that her supervisors were monitoring her emails and internet usage. She eventually accused her coworkers and supervisors of secretly altering her work product and spying on her from a van in the company parking lot. Children's repeatedly investigated Walker's accusations and found nothing to substantiate them. It recommended that Walker consider taking advantage of the company's employee-assistance program ("EAP"), which was provided by an independent contractor known as Empathia, Inc. The EAP assisted employees with personal or work-related problems that affected their job performance, health, or mental or emotional well-being. Def. Proposed Finding of Fact ("PFOF") ¶ 39. Walker did not immediately enroll in the program, and she continued to accuse her coworkers of spying on her, bullying her, and altering her work product, among other things.

Eventually, Children's determined that Walker's unsupported accusations were placing a strain on her department and the company. Walker's belief that her coworkers and supervisors were targeting her interfered with her ability to collaborate with other team members, and the coworkers she accused of wrongdoing felt hurt by her accusations. Moreover, Walker's accusations caused Children's to expend resources investigating her claims, which always turned out to be baseless. For these reasons, in April 2016, Walker's supervisors informed Walker that Children's would make her participation in EAP mandatory. Her supervisors told her that Children's was imposing this requirement because it believed that EAP would provide her with "access to resources that will help build trust with her co-workers and alleviate the impact her accusations were causing to her relationships with her team members." Def. PFOF ¶ 91.

During the meeting in which Walker's supervisors told her that she would be required to attend EAP sessions, they also presented her with Empathia's authorization form for disclosure of protected health information. This was a form that Walker was expected to sign so that Empathia could inform Walker's supervisors whether she was attending EAP sessions and following Empathia's recommendations. If Walker did not sign the form, Empathia would not share such information with Walker's supervisors, for then it would be concerned that disclosure of the information might violate the Health Information Portability and Accountability Act ("HIPAA").

Walker told her supervisors that she did not want to sign Empathia's form because she did not want her health information disclosed. In response, Walker's supervisors assured her that neither Empathia nor Children's would disclose her health records; rather, they were interested only in knowing whether Walker attended the EAP sessions and whether she was following Empathia's recommendations.

During a subsequent meeting, Walker agreed to participate in EAP sessions, but she again refused to sign the authorization form. Her supervisors again told her that they needed her to sign the form so that they could confirm that she was attending the sessions and following Empathia's recommendations. They also told Walker that if she did not sign the form, it would affect her employment. Walker said that she understood. Walker's supervisors told her that she must sign the form by April 28, 2016.

Walker did not sign the form by April 28, 2016. For this reason, Children's suspended her employment. However, over the next few days, Walker and her supervisors continued to discuss the form in an effort to allay her concerns. After several discussions, Children's agreed to modify the form such that the only information

3

Empathia would be allowed to share with Children's was whether and when she attended EAP sessions. Children's dropped its insistence that Empathia be allowed to share whether Walker was following its recommendations.

Walker still refused to sign the form. The sticking point was a clause acknowledging that Empathia could not prevent Children's from redisclosing information it received from Empathia. Walker wanted this clause removed from the form, but Empathia would not agree to remove it because Empathia had no control over Children's and could not prevent Children's from redisclosing any information it shared. Children's told Walker that it had no interest in learning any specific information about her EAP sessions and that the only information Empathia would disclose to it is whether she attended the sessions.

On May 6, 2016, after Walker made clear that she would not sign the form as long as it contained the redisclosure clause, Children's terminated her employment. Walker then filed a charge of discrimination with the Equal Employment Opportunity Commission in which she alleged that Children's had discriminated against her on the basis of race and disability. After the EEOC issued Walker a right-to-sue letter, she commenced this lawsuit. She alleges that Children's discriminated against her on the basis of race and on the basis of a perceived disability.

## II. DISCUSSION

Summary judgment is required where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, I view the evidence in the light most favorable to the non-moving party and must grant the motion if no reasonable

juror could find for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986).

A.  **Disability Discrimination**

The Americans with Disabilities Act provides that an employer may not "discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).[1] The ADA defines "disability" as follows: (1) a physical or mental impairment that substantially limits one or more major life activities; (2) a record of such an impairment; or (3) being regarded as having such an impairment. *Id.* § 12102(1). In the present case, Walker does not allege that she has a physical or mental impairment that substantially limits one or more major life activities or that she has a record of such an impairment. Instead, she contends that Children's "regarded" her as having a physical or mental impairment, and that it discriminated against her based on this perceived impairment.

Children's contends that Walker cannot show that it regarded her as having a physical or mental impairment that substantially limited a major life activity. However, to meet the definition of "disability" under the "regarded as" prong, Walker does not have to show that Children's regarded her as being substantially limited in a major life activity.

---

[1] The legal standards governing a claim for disability discrimination under the Rehabilitation Act are largely the same as those under the ADA. *See Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 671 (7th Cir. 2012). In the present case, the parties identify no relevant differences between the two laws. Thus, although the analysis in the text focuses on the ADA, it applies with equal force to Walker's claims under the Rehabilitation Act.

5

Rather, under recent amendments to the ADA, "[a]n individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A). In the present case, the evidence arguably suggests that Children's regarded Walker as having a mental impairment that caused her to be unusually suspicious of her coworkers and supervisors. Thus, for purposes of this motion only, I will assume that Walker meets the ADA's definition of "disability" under the "regarded as" prong.

To prevail on her claim, Walker must also show that she is a "qualified individual," which the ADA defines as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). However, because Walker is proceeding under the "regarded as" prong, Children's was not required to provide her with a reasonable accommodation. *See* 42 U.S.C. § 12201(h); *Majors v. General Elec. Co.*, 714 F.3d 527, 535 n.4 (7th Cir. 2013); *Powers v. USF Holland, Inc.*, 667 F.3d 815, 823 n.7 (7th Cir. 2011). Thus, to succeed, Walker must show that she was performing the essential functions of her position at the time Children's allegedly discriminated against her on the basis of a perceived impairment.

Children's does not dispute that Walker adequately performed the primary function of her position, which involved the preparation of materials to assist Children's decisionmakers with strategic planning. However, by the time it required her to attend EAP sessions, Children's had determined that Walker was not working well with her

coworkers and that her string of baseless accusations was disrupting the department. The ability to work reasonably well with others and not disrupt the workplace are essential functions of any position. *See Williams v. Motorola, Inc.*, 303 F.3d 1284, 1290–91 (11th Cir. 2002) ("An employee's ability to handle reasonably necessary stress and work reasonably well with others are essential functions of any position. Absence of such skills prevents the employee from being 'otherwise qualified.'"); *Palmer v. Circuit Court of Cook County, Ill.*, 117 F.3d 351, 352 (7th Cir. 1997) (recognizing that employer may terminate mentally impaired employee if mental impairment causes disruptions in the workplace). Thus, although Children's insistence that Walker attend EAP may have been an act taken on the basis of a perceived mental impairment, it would not be an illegal form of discrimination on the basis of disability if it was taken in response to Walker's demonstrated distrust of her coworkers and supervisors.

Here, there is no evidence to suggest that Children's was not genuinely concerned that Walker's unfounded accusations against her coworkers and supervisors harmed morale in the department and required Children's to waste resources investigating her claims. To the contrary, the record compels the conclusion that Children's made Walker's participation in EAP mandatory to address those concerns. On April 26, 2016, Walker's supervisor, Lisa Vande Yacht, wrote Walker a letter in which she explained that, as a result of Walker's many accusations, "staff resources have been expended for allegations that have proven to be baseless." ECF No. 30-5. Vande Yacht also explained that Children's wanted "to work towards establishing a more trusting work environment," which would involve Walker "becoming less distrusting of Children's and [her] peers." *Id.* The letter continued:

> One of the first steps in assisting you in this regard involves having a consultation with our Employee Assistance Program, Empathia. Empathia is a valuable resource for Children's employees. By speaking with the Empathia team, you will be able to confidentially discuss current concerns that you are having with the work environment. Empathia, in turn, will work with you to determine a plan for moving forward.

*Id.*

In her response to Children's motion for summary judgment, Walker does not dispute that she had trust issues involving her coworkers and supervisors or that EAP sessions might have been a constructive way to deal with those issues. Instead, she contends that Children's should have allowed her to attend EAP sessions without signing the authorization form. Walker points out that the form itself states that an employee may participate in EAP without signing the form, and she contends that Children's should have allowed her to participate without signing the form as a reasonable accommodation.

It is true that the form states that an employee may participate in EAP even if he or she refuses to sign the authorization form. But that provision was designed to apply to a situation in which Children's did not make the employee's participation in EAP mandatory and insist on receiving confirmation that the employee attended the sessions. In Walker's case, Children's determined that her continued employment was conditioned on her attending EAP sessions, and thus Children's needed confirmation that Walker was attending the sessions, which Empathia could not provide unless Walker signed the authorization form. Lisa Vande Yacht explained this to Walker in an email:

> As we've made clear, you can voluntarily seek assistance from EAP regardless of whether you provide confirmation to us that you've done so.

> We would never condition your right to receive EAP services on providing us with such confirmation. But we can and are conditioning your ongoing employment on providing confirmation that you have sought EAP services and are complying with EAP recommendations. If we do not receive confirmation that you've consulted with and followed recommendations from EAP in circumstances where we have every right to require such confirmation, your refusal constitutes insubordination and will, if not rectified, cost you your job.

ECF No. 35-3 at p. 12 of 29.

Moreover, as explained above, Children's had no obligation to provide Walker with a reasonable accommodation. Walker does not claim to have had a physical or mental impairment that substantially limited one or more major life activities and that required a reasonable accommodation. Rather, she contends that Children's regarded her as having a physical or mental impairment. Under the ADA, an employer is not required to provide a reasonable accommodation to an employee who meets the definition of "disability" only under the "regarded as" prong. 42 U.S.C. § 12201(h). Only if Walker proved that she had a mental impairment that prevented her from signing the authorization form could Children's waiver of that requirement be considered a required reasonable accommodation. But because Walker does not claim that she had such an impairment at the time Children's terminated her employment, she cannot succeed on a reasonable-accommodation claim.

Walker also points out that she received two positive employment evaluations during her tenure at Children's, and that they do not criticize her for causing disruptions in the workplace. However, the employment evaluations focus primarily on the quality of Walker's work rather than on her behavior. As noted above, Children's does not dispute that Walker always produced satisfactory work-product. Instead, the problem was her

9

distrust of others, which harmed the morale of the department and prevented Walker from working as part of a team. Walker is correct that the performance evaluations do not document her trust issues or any disruptions she caused within the department. But one of the performance evaluations was completed in January 2015, before Walker began to engage in her distrustful behavior. *See* ECF No. 35-3 at p.13 of 29. The other was completed in November 2015, five months before Children's decided that Walker's distrust of others was becoming a problem. *See* ECF No. 35-3 at p.17 of 29. Thus, the absence of criticism in Walker's performance evaluations is not evidence from which a jury could reasonably conclude that Children's is lying when it says it was concerned with Walker's trust issues.

In short, the only reasonable conclusion that may be drawn from the record is that Children's determined that Walker's unfounded complaints against her coworkers and supervisors placed a strain on the department. Based on this determination, Children's required Walker to attend EAP sessions and to allow the EAP provider to confirm her attendance. When Walker refused to sign the authorization form allowing the EAP provider to confirm her attendance, Children's terminated her employment. Based on these facts, a reasonable jury could not find that Children's unlawfully discriminated against Walker on the basis of a perceived disability. I will grant Children's motion for summary judgment on her claims under the ADA and the Rehabilitation Act.

**B.    Race Discrimination**

Walker also alleges a claim for race discrimination under Title VII and 42 U.S.C. § 1981. However, Walker points to no evidence that would support such a claim.  Her only reference to race discrimination in her brief is to note that she was "a Black woman

10

in an overwhelmingly White professional employment environment." ECF No. 35 at p.13. That, by itself, does not prove race discrimination. Moreover, Walker points to no similarly situated employee who was not black and who received more favorable treatment than her. Finally, as discussed above, Children's had legitimate, nondiscriminatory reasons for terminating her, namely, Walker's inability to work well with her colleagues and her refusal to sign the authorization form. No evidence in the record suggests that these reasons were pretexts for race discrimination. Accordingly, I will grant summary judgment to Children's on Walker's claims under Title VII and § 1981. *See Reed v. Freedom Mortg. Corp.*, 869 F.3d 543, 547 (7th Cir. 2017) (noting that, for race-discrimination claims, "the ultimate legal question 'is simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race . . . caused the discharge or other adverse employment action'").

## III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that Children's motion for summary judgment (ECF No. 27) is **GRANTED**. The Clerk of Court shall enter final judgment.

Dated at Milwaukee, Wisconsin, this 8th day of November, 2019.

                                                 s/Lynn Adelman
                                                 LYNN ADELMAN
                                                 United States District Judge